UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| Heron Investments, Ltd. | ) | |
| a Foreign Company | ) | Case No.: 2:20-CV-00592 |
| Plaintiff | ) | |
| | ) | Jury Trial  <u>NO</u> |
| VS | ) | |
| | ) | |
| Prima Luce, LLC | ) | |
| a Florida Limited Liability Company | ) | |
| Defendant | ) | |
| _____/ | ) | |

## <u>COMPLAINT FOR A CIVIL CASE ALLEGING BREACH OF CONTRACT</u>

COMES NOW, Plaintiff, Heron Investments, Ltd., for its Complaint alleges:

1. Plaintiff, Heron Investments, Ltd., brings this action to obtain relief, restitution, and other equitable relief for Defendant's acts or practices in Breach of Contract between the parties.

### Parties to This Complaint

**A. The Plaintiff**
Heron Investments, Ltd.
104-88 Nansanhuan, Xi Road
Femgtai District
Bejing, China

**B. The Defendant**
Prima Luce, LLC
2400 First Street
Suite 214
Fort Myers, Florida 33908

### Jurisdiction and Venue

1. Federal courts are courts of limited jurisdiction, under 28 USC 1332, federal courts may hear cases in which citizens od one State sues a Citizen of another State or nation and the amount at stake is more than $75,000.00.
2. This is an action for damages greater than Seventy-Five Thousand Dollars ($75,000.00) excluding costs, interest, and reasonable attorney's fees.

3. At all times material hereto the Plaintiff, Herons Investments Ltd.'s, is a Foreign Company, with its principle place of business being 104-88 Nansanhuan, Xi Road, Femgtai District, Beijing China.

4. At all times material hereto the Defendant, Prima Luce, LLC.'s, is a Florida Limited liability Company, with its principle place of business being 2400 First Street, Suite 214, Fort Myers, Florida 33908.

5. The actions or omissions giving rise to complaint occurred Lee County Florida.

6. Any or all conditions precedent to this action have been performed.

### General Allegations

7. On or about February 8, 2017, Heron Investments, Ltd., and Prima Luce LLC., entered a contract entitled "Overseas EB-5 Services Agreement" (a copy is filed with this Complaint).

8. Heron Investments, LTD., was to be an immigration consulting agent based in Beijing China.

9. Prima Luce LLC., is a US real estate developer working in and developing projects in and around Fort Myers Florida.

10. Prima Luce LLC., was offering EB-5 compliant investment opportunities ("the Offering") to foreign investors in China.

11. Heron Investments Ltd. was to receive a fee for findings foreign investors for Prima Luce, LLC.

12. Heron Investments, Ltd., was to receive an annual fee equal to ten percent (10%) of the amount raised in the Offering, payable for the first seven (7) years after the investment is placed with the Fund.

13. Heron Investments, Ltd., was to receive an administrative fee of fifty thousand dollars ($50,000.00) for each investor brought to the Offering.

14. Heron Investments, Ltd., has performed its obligation under the contract by bring investor Wang, Hue to the Offering, (a copy of the wire conformation is filed with this Complaint).

15. Heron Investments, Ltd., has performed its obligation under the contract by ensuring that investor Wang, Hue completed and submitted an I-526 petition (a copy is file with this Complaint).

16. Prima Luce LLC., has failed to pay to Heron Investments, Ltd., the contracted administration fee.

17. Prima Luce, LLC., has failed to pay to Heron Investments, Ltd., the contracted annual fee.

18. Heron Investments, Ltd., has been injured by the Defendant's breach of the contract.

### Count 1 - Breach of Contract

19. The Plaintiff repeats and re-alleges Paragraph 1 through 17 as if each paragraph were recited verbatim within this Count.

20. The Plaintiff, Heron Investments, Ltd., has performed or substantially performed all its obligations under the contract.
21. The Defendant, Prima Luce, LLC., has failed to perform its obligations under the contract by refusing to compensate the plaintiff as per the terms and condition of the contract.
22. The Defendant has failed to make payments as per the terms and condition of the contract to the Plaintiff.
23. All conditions required by the contract for the Defendant's performance have occurred.
24. The Defendant's breach is a material and substantial breach that goes to the essence of the contract.
25. The Plaintiff has been injured by the Defendant's breach.
26. The Plaintiff has had to hire the Law Offices of Liu & Associates PA to file this claim.
27. The Plaintiff has had to pay reasonable attorney costs and fee regarding this claim.

## Count 2- Fraud

28. The Plaintiff repeats and re-alleges Paragraph 1 through 17 as if each paragraph were recited verbatim within this Count.
29. On or about February 8, 2017 the Defendant's represented to the Plaintiff that they would pay to the Plaintiff certain sums of money if the Plaintiff procured investors for the Defendants EB-5 compliant investment opportunities.
30. These representations were false, and the Defendants knew the falsity of these statements at the time they were made.
31. Plaintiff is informed and believes and thereon alleges that the Defendants had no intention of paying the contracted sums of money for procuring any foreign investors.
32. The Plaintiff relied on the representations of the Defendants and would not have brought any foreign investors to Prima Luce, LLC., otherwise.
33. The Plaintiff is informed and believes and thereon alleges that the Defendants specific purpose was to defraud the Plaintiff with malice toward the Plaintiff.
34. The Plaintiff has been injured by loss of use of funds and loss of reputation.
35. The Plaintiff seeks compensatory damages in excess of $75,000.00 for said acts.
36. The acts were malicious, fraudulent, and oppressive, justifying and award of punitive damages so that Defendants will not engage in such conduct in the future and make an example of them.
37. The Plaintiff has had to hire the Law Offices of Liu & Associates PA to file this claim.
38. The Plaintiff has had to pay reasonable attorney costs and fee regarding this claim.

## Prayer for Relief

Wherefore, Plaintiff, Heron Investments, Ltd., request that the Court enter a judgment in its favor against Prima Luce, LLC., as follows:

a) Awarding Plaintiff damages against Defendants for Breach of Contract;

b) Awarding Plaintiff damages, compensatory and punitive against Defendants for Fraud;

c) Awarding Plaintiff reasonable attorney fee, costs, interest and expenses of this litigation pursuant to the contract;

d) Ordering any other relief that this Court may deem just and proper.

## Certification

Under Federal Rules of Civil Procedure 11, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirement of Rule 11.

## Certificate of Service

I hereby certify that on August 14, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: Prima Luce, LLC., C/O Registered Agent Frank J. Aloia, Jr., Esq., 2222 Second Street, Fort Myers, FL 33901.

Respectfully Submitted,

*Mark McMillan*

Mark A McMillan, Esq.
Law Office of Liu & Associates, P.A.
刘 庆 贺 律 师 事 务 所
Florida Bar No. 98020
5052 W. Colonial Dr.
Orlando, Florida 32808
407-930-8082 office
407-569-4123 fax
Email: mark.mcmillan@liulawfirmusa.com
info@liulawfirmusa.com

# INDEX OF EXHIBITS

| Number | Title |
|--------|-------|
| 1 | Contract |
| 2 | Bank Wire Conformation |
| | |

# EXHIBIT

1

## OVERSEAS EB-5 SERVICES AGREEMENT

THIS OVERSEAS EB-5 SERVICES AGREEMENT ("**Agreement**") is made this 8st day of February, 2017 by and between Prima Luce LLC, a limited liability company having a principal address of 2400 First Street Suite 214 Fort Myers, Florida 33908 (the "**Company**"), and Heron Investments, Ltd., a limited company organized in Beijing, China, having a principal address of 104-88 Nansanhuan, Xi Road, Fengtai District, Beijing China (the "**Agent**") (individually the "Party," and together the "Parties").

### RECITALS:

WHEREAS, Agent is an immigration consulting agent based in Beijing, China and is engaged in the business of assisting businesses with obtaining financing utilizing the EB-5 Immigrant Investor Program (the "**EB-5 Program**") established by United States Citizenship and Immigration Services ("**USCIS**");

WHEREAS, Agent has extensive experience in doing business in China (the "**Territory**"), and elsewhere, as well as relationships with investors, companies, and principals in the Territory;

WHEREAS, Agent has many connections in the Territory and elsewhere that may be interested in investing in projects sponsored by the Company and or associated with the EB-5 Program;

WHEREAS, the Company is a US real estate developer, and owner of certain real estate development projects in Fort Myers, Florida and the surrounding region;

WHEREAS, the Company is associated with a participating EB-5 Regional Center, the American Liberty Regional Center ("ALRC"), and that said Regional Center is responsible for organizing and sponsoring certain funds designed to meet and permit EB-5 compliant offerings to foreign investors;

WHEREAS, the ALRC, in conjunction and association with the Company, has created an EB-5 compliant offering for a Company project, Prima Luce (the "Project"), known as Prima Luce EB-5 Fund, LLC (the "Fund")

WHEREAS, the Fund is managed by Prima Luce Management, LLC (the "Fund Manager").

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.    <u>**SERVICES OF AGENT**</u>.



11298687.4

Agent shall provide the following services to the Company in connection with this Agreement (collectively, the "**Services**"):

(a)     Agent will identify and source suitable immigrant investors outside the United States ("**Investors**") to invest in certain of the Company's projects that qualify under the EB-5 Program.

(b)     Agent will conduct preliminary due diligence on candidates to ensure each is suitable for funding prior to introduction to the Company, including, without limitation,

(i)     Agent must register any prospective Accredited Investors (as defined below) with the Company by providing the Company with the (i) completed Investor Information Form for such prospective Accredited Investor, attached hereto as Exhibit A, and (ii) Subscriber Acknowledgement properly signed by such Accredited Investor in the form attached hereto as Exhibit B, respectively, within five (5) days of notifying the prospective Accredited Investor of the opportunity to invest in the relevant Project. Within fifteen (15) days' receipt of the completed Investor Information Form, Company will notify Agent in writing of any dispute with Agent regarding the prospective Accredited Investor.

(ii)     confirming each such candidate is an "accredited investor" as defined in Rule 501 of Regulation D of the Securities Act of 1933, as amended (the "**Securities Act**") (*i.e.*, a natural person (A) who has individual net worth, or joint net worth with the person's spouse, that exceeds $1,000,000 at the time of the purchase, excluding the value of the primary residence of such person; or (B) with income exceeding $200,000 in each of the two most recent years or joint income with a spouse exceeding $300,000 for those years and a reasonable expectation of the same income level in the current year).

(c)     Agent will translate, as needed, the Company's relevant Project-related materials and documents into the foreign native language commonly used within the Territory. Agent and Company agree and acknowledge that in the event of any inconsistencies between the English language versions of such documents and the translated language versions prepared by Agent, the English language versions shall govern.

(d)     Agent will provide the Company with copies of all of the executed subscription materials with respect to each Investor.

Agent shall be responsible for all of its costs and expenses incurred by Agent related to the performance of the Services hereunder, and the Company shall have no obligation to pay for or reimburse Agent for such costs and expenses.

11298687.4                                    2

2.     **FEES TO AGENT**.

(a)     Subject to the limitations set forth herein, in consideration for the Services provided to the Company hereunder, the Company will pay to Agent the following fees (collectively, the "**Fees**"):

(i)     The Agent shall receive an annual fee equal to ten percent (10%) (the "**Annual Fee**") of the amount raised in the Offering, payable for the first seven (7) years after the investment is placed with the Fund, so long as: 1. the balance of the investment is outstanding and at risk, not to include a USCIS approved side-account; and 2. the Agent, either directly, or through the Agent's own network, is the introducing source of the investor to the Offering (the investor is a "Sourced Investor" from or through the Agent).

a.     The first year of interest shall be payable in advance, ten (10) days after the Company has received the full subscription amount.

b.     After the first anniversary, and for the next six (6) years, the Annual Fee will be paid quarterly in arrears on the Company's Quarterly Pay Dates.

(ii)     The Company shall pay to Agent an administrative fee of $50,000 (an "Administrative Fee") for each Sourced Investor brought to the Offering, provided said Sourced Investor signs and submits all necessary paperwork, and deposits with the Company both the $500,000 Fund Investment, and the $50,000 Expense Amount with the Fund Manager's account.

(iii)     The Company shall pay to Agent, following the retirement of all debts and associated liabilities to the Project, and after completion of the Project, a sum equal to ten percent (10%) of the Net Profit (all sales less all costs) from the Project.

(b)     The Fees with respect to a Sourced Investor shall not be deemed earned by Agent, and Agent shall have no right to receive such Fees, until such time that the Total Subscription Amount is released to the Project and the Fund Manager receives its entire share of the Expense Amount (the "Total Subscription Disbursement Date").

(c)     (c)     If a Sourced Investor's I-526 petition is denied (without appeal or after denial of any appeal), the denial will have no effect on the Administrative Fee if already paid by Company to the Agent, but none of the other fees included in Section 2 shall thereafter apply or be paid or be owing. The Company shall pay any and all Fees owing to Agent by wire within ten (10) business days of the Total Subscription Disbursement Date.

3.     **OBLIGATION OF THE COMPANY**.

The Company shall treat all introductions by Agent in a professional manner and respect its relationship with each Sourced Investor.

4.     **DUTIES AND INDEPENDENT CONTRACTOR STATUS**.

(a)     **Agent's Duties**.  Agent will perform its services without any supervision from Company.  Notwithstanding anything in this Agreement to the contrary, Agent shall not

11298687.4                                    3

negotiate on behalf of nor bind Company to any agreement without Company's prior written consent.

(b) **Offering Limited to Accredited Investors; No Representations**. Agent agrees that he will contact only Accredited Investors for purposes of making an introduction to the Company. Agent will not make any representations to prospective Accredited Investor about the merits of the investment opportunity, but will defer to the Company's written materials and Company's officers to make any such representations.

(c) **Materials Entrusted to Agent**. Company may from time to time provide Agent with written materials such as private placement memoranda, financial documents, and other materials to aid in attracting investment. Agent agrees that he/she will not make any copies of such materials without Company's written consent. Agent agrees that any such materials will only be shared with Accredited Investors and that Agent will notify Company in writing of all persons and organizations to whom such materials are sent.

(d) **Independent Contractor Status**. This Agreement does not constitute a hiring by either party. The parties intend that so far as shall be in conformity with the law, Agent shall be an independent contractor and not Company's employee. Subject to Agent's ongoing review and overall direction of the projects on which Agent is working, Agent retains discretion for methods, techniques and processes in performing his duties. There is no requirement that Agent devote his full productive time to Company. The parties are and shall remain independent contractors bound by the provisions hereof. Agent is under Company's control as to the result of Agent's work only and not as to the means by which such result is accomplished. This Agreement shall not be construed as a partnership, and Company shall not be liable for any obligation incurred by Agent, nor shall Company be liable for any injuries, liabilities or damages suffered by or caused by Agent. Each party shall indemnify, defend and hold the other harmless from all damages, claims, losses, causes of action, costs, expenses and fees in connection with any liability or obligation incurred by the party.

(e) **Business Expenses/Office Location**. The expense of any office, including rental, furniture and equipment, supplies, the salaries of Agent's employees, telegraphs, telephones, postage, advertising; and all other charges or expenses incurred by Agent in the performance of this Agreement shall be incurred at Agent's discretion and paid by Agent.

5. **NO AGENCY AUTHORITY**.

Agent will not represent himself as having any powers except those authorized by this Agreement, and subject to any applicable law. Agent shall have no authority to bind Company by any promise or representation unless specifically authorized in writing in a particular transaction. Agent shall have no authority to order, direct or command any of Company's employees.

6. **COVENANT NOT TO USE TRADE SECRETS**.

(a) **Referral Sources and Solicitation**. Information regarding the names, addresses and telephone numbers of Company's clients, Company's business plans, marketing

materials, architectural drawings, engineering drawings, market studies, and financial data ("**Confidential Information**") coming into Agent's possession during the term of this Agreement, or any prior Agreement, are trade secrets wholly-owned by Company.   All forms and other materials, whether furnished by Company or purchased by Agent, upon which this information is recorded shall be the sole and exclusive property of Company. During the term of this Agreement, Agent shall only use Confidential Information to carry out the intent of this Agreement for the benefit of Company. All other uses are strictly prohibited. Additionally, Agent shall not for a period of three (3) years immediately following the termination of this Agreement with Company, either directly or indirectly, do any of the following:

     i.     Make known to any person, firm or corporation the Confidential Information, or use the Confidential Information for any personal or business purpose; or

     ii.     Call on, solicit, or take away any of the clients or referral sources of Company, with whom the Agent became acquainted during his affiliation with Company, either for Agent or for any person, firm, corporation, association or other entity for any reason or purpose whatsoever.

     (b)     **Injunctions, Etc**.  In the event of a breach or threatened breach by Agent of the provisions of this paragraph 8, Company shall be entitled to an injunction restraining Agent from disclosing, in whole or in part, the Confidential Information, or from rendering any services to any person, firm, corporation, association or other entity to whom such Confidential Information, in whole or in part, has been disclosed or threatened to be disclosed.   Nothing herein shall be construed as prohibiting Company from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages from Agent.

## 7.     NO LIABILITY OF COMPANY.

Company shall not be liable to Agent for any expenses incurred by Agent or for any of his acts except as specifically required by law.   Agent is to provide all of the tools and equipment he needs to perform pursuant to this Agreement.

## 8.     EXCLUSIVE RIGHT OF REPRESENTATION WITHIN CHINA

If the Agent shall introduce one (1) accredited investor (as defined under Rule 501 of Regulation D of the Securities Act) who signs, submits and fully funds their executed subscription agreements with the Company within 30 days of the execution of this Agreement, and then introduces a second (2nd) accredited investor who signs, submits and fully funds their executed subscription agreements with the Company within 60 days of the execution of this Agreement, the Agent will enjoy an ongoing exclusive right to representation of the Company's Offering within China for one year from the date of execution.   Failure to deliver the first accredited investor within 30 days will result in the lapse of the Exclusive Right, and failure to thereafter deliver a second accredited investor within 60 days from the date of execution will also result in the lapse of the Exclusive Right of Representation.   If the Agent succeeds in bringing 25 or more accredited investors to the Offering, and they all fully fund their

subscriptions, the Agent will have secured a second full year of Exclusivity in China.  In the event of a lapse in the Exclusive Right of Representation, the Company may enter into one or more other selling agent agreements to simultaneously represent the Company's Offering in China, and the Agent shall continue under this Agreement, but on a non-exclusive basis.  No fees or payments shall be due or payable to the Agent should other accredited investors be sourced and introduced to the Company by other agents if and when said investors sign and fund a subscription agreement with the Company for the Offering.

9.      **ACCEPTANCE OF INVESTORS**.

The decision to accept an Investor in the Project is in the absolute and sole discretion of the Project and/or the Company.  It is acknowledged and agreed by Agent and the Company that no Agent's Fee will be due and payable to Agent unless: (i) the Accredited Investor submitting their subscription to the Offering for investment into the Project is accepted by the Company, and/or its representative;  and (ii) the Fund Manager receives Notice from the USCIS of the Investor's I-526 petition being received and filed with the USCIS, said notice to be reported to the Company upon receipt.

10.     **REPRESENTATIONS AND WARRANTIES OF AGENT**.

The Agent hereby makes the following representations and warranties:

(a)     **Duty to Inform Prospective Investors**.  Agent will furnish its prospective investors with marketing materials and instructions regarding a Project as may be necessary with respect to and in accordance with the relevant subscription materials, including the utilization of the Company's authorized publications, literature and the relevant subscription materials.

(b)     **Duty to Inform Prospects with Authorized Material**.  Agent shall not make any representations or warranties to any third-party regarding the Company and/or a Project not otherwise previously authorized by the Company in writing.

(c)     **Duty to not own interest in Company or Affiliate**.  Agent covenants and agrees that it shall not, at any time during the term hereof, have any ownership in or other affiliation with the Company.

(c)     **Duty Not to Disparage**.  Agent agrees that it shall not make any untrue or disparaging statement or criticism, written or oral, nor take any action which is adverse to the interests of the Company or that would cause the Company or its current and former officers, directors, employees, or investors embarrassment or humiliation or otherwise cause or contribute to such persons being held in disrepute by the public or the Company's customers, projects, offerings or employees, neither during or after the term of this Agreement.  If and when this Agreement is terminated, from and after the Date of Termination, the Agent shall refrain from discussing the terms and conditions of the termination of the engagement with any employee, investor, other agents, or customer of the Company or with any reporter, media contacts or any form of public media, unless such communication is previously approved in writing by the Company, or required by law.

11298687.4                                    6

Agent acknowledges and agrees that a breach of the duty contained in this Subparagraph 10(c) will cause irreparable injury to the Company and that remedies at law available to the Company for any actual or threatened breach by the Agent of such duties will be inadequate and that the Company shall be entitled to specific performance of the duties in this Subparagraph or injunctive relief against activities in violation of this Subsection by temporary or permanent injunction or other appropriate judicial remedy, writ or order, without the necessity or proving actual damages. The Parties agree that damages in these matters would be difficult to impossible to calculate.  Therefore, the Parties agree that should the Agent violate this Subparagraph a liquidated damage would be due from the Agent to the Company in the amount of US $1 million.  In the event of any breach by the Agent, the Company shall be entitled to immediately cease any and all payments and benefits being provided to the Agent and/or his subagents. The Agent acknowledges and agrees that the duties contained in this Subparagraph shall be construed as agreements independent of any other provision of this or any other contract between the Parties hereto, and that the existence of any claim or cause of action by the Agent against the Company, whether predicated upon this or any other contract, shall not constitute a defense to the enforcement by the Company of said duties.

11.     **COMPLIANCE WITH LAWS**.

(a)     Agent hereby warrants, represents and agrees that Agent and its representatives will conduct themselves when performing the functions required under this Agreement in a lawful manner and they will comply, at Agent's own expense, with all laws, rules and regulations of all federal, state and other jurisdictions, governments and authorities, including the purchase and procuring of all business and other licenses required of Agent by any governmental authority for the performance of any of the functions contracted for and contemplated by this Agreement. Agent recognizes that the sale and distribution of the investment hereunder is subject to various federal, state and foreign laws and regulations, and that any misrepresentation in the sale and distribution of the investment hereunder may not only be in violation of such laws, but will be extremely detrimental to the name, reputation and goodwill of the Company.

(b)     In furtherance of the purposes of Section 6(a) above, in conducting the Services, Agent hereby further warrants, represents and agrees to comply with all applicable securities laws, rules and regulations in the United States, including, without limitation, Regulation S and Regulation D of the Securities Act, federal broker dealer laws and the Investment Advisers Act of 1940. Agent shall at all times comply with all laws, codes, ordinances, rules and regulations of all foreign jurisdictions in connection with its performance of Services and Agent shall maintain any requisite licenses or permits relating thereto.

(c)     Agent will only introduce, and receive indication of intention to invest in a project from, potential Investors who represent that they are (i) non-U.S. Persons (as defined in Regulation S under the Securities Act) who are purchasing securities in an "offshore transaction" outside the U.S. and that no "directed selling efforts" took place within the U.S., in compliance with Regulation S, or (ii) U.S. Persons who are "accredited investors" as defined in Rule 501(a) of Regulation D under the Securities Act and in which case, Agent will ensure that (A) its conduct and the conduct of its agents would not in any way constitute a "general solicitation" or

"general advertising" (within the meaning of Rule 502 of Regulation D under the Securities Act) in the U.S. with respect to the securities; and (B) neither it or its agents will receive any commissions with respect to any Investor in an offering of securities hereunder who qualifies for the exemption under Regulation D and will otherwise comply in all respects with U.S. broker-dealer laws. In addition, Agent shall ensure that each Investor meets all such other eligibility criteria as set forth in the relevant subscription materials related to a certain project.

        (d)      Agent agrees that its provision of any of the Services in any jurisdiction will be conducted in compliance with Regulation S and with the private placement or other applicable laws, rules and regulations of such jurisdiction in which the Services are performed. Agent will not provide any of the Services in any jurisdiction, or to any prospective Investor located in any jurisdiction, where there is a prohibition on the sale of any securities with respect to a certain project as described herein.

        (e)      In further compliance with U.S. securities laws, Agent hereby represents and warrants that:

        (i)      any and all communications (including, without limitation, by means of email or facsimile transmission) and presentations or other kinds of solicitations made with respect to an investment in securities (including, without limitation, any and all related advertising or other marketing materials), if any, shall be made (or otherwise provided) to prospective Investors outside the United States. The term "United States" as used in this Agreement means the United States of America, its territories and possessions, any state of the United States and the District of Columbia;

        (ii)      all of the relevant subscription materials will be provided to the prospective Investor outside of the United States;

        (iii)      any Investors will execute all of the relevant subscription materials outside of the United States;

        (iv)      all of the relevant funding of the prospective Investors' investment will be made through an account of the prospective Investors outside of the United States;

        (f)      In further compliance with U.S. securities laws, the Company and Agent hereby agree and acknowledge that,

        (i)      THE COMPANY WILL NOT PARTICIPATE IN ANY WAY IN THE SOLICITATION OF PROSPECTIVE INVESTORS OR ANY OTHER MARKETING OF SECURITIES TO PROSPECTIVE INVESTORS; PROVIDED, HOWEVER, THAT THE COMPANY MAY PROVIDE CERTAIN INFORMATION TO PROSPECTIVE INVESTORS, WHICH

INFORMATION SHALL BE (A) SOLELY RELATED TO PROVIDING THE PROSPECTIVE INVESTOR DUE DILIGENCE ASSISTANCE REGARDING A PARTICULAR PROJECT AND/OR THE IMMIGRATION PROCESS, AND (B) EXPRESSLY EXCLUDES ANY INFORMATION REGARDING THE MARKETING OF AND/OR INVESTMENT IN THE SECURITIES THEREUNDER; and

(ii)   THE COMPANY IS NOT GIVING AND HAS NO AUTHORITY TO GIVE, ANY INVESTMENT ADVICE TO ANY PROSPECTIVE INVESTOR OR OTHER PERSON OR ENTITY WITH RESPECT TO THE PURCHASE OF A SECURITY, AND NO PROSPECTIVE INVESTOR WILL REQUEST OR OTHERWISE SEEK ANY SUCH INVESTMENT ADVICE FROM THE COMPANY.

## 12.  **INDEMNIFICATION**.

Agent shall indemnify, defend and hold harmless the Company and its affiliated and controlling entities, owners, directors, managers, employees, officers, agents, subcontractors, licensors, suppliers, attorneys and other representatives, from and against any third party liabilities, claims, suits, demands, actions, fines, damages, losses, costs and expenses (including, without limitation, reasonable attorneys' fees), direct and consequential, arising out of or in connection with this Agreement, including without limitation, arising from Agent's violation of foreign or U.S. securities laws.

## 13.  **CONFIDENTIALITY**.

Agent and the Company agree that neither will disclose the other parties pricing, sales information, financial information, marketing information, or standard operating procedures (collectively "**Confidential Information**") except as necessary to perform the services required hereunder, and unless expressly ordered to do so by court order or a governmental agency which requests the information in the exercise of its administrative powers and it promptly notifies the other party of any such request or order.  No information shall be considered Confidential Information if it:

(i)    constitutes readily ascertainable public information;

(ii)   subsequently becomes public information through no fault of the party to whom it was revealed herein; or

(iii)  producer obtains from a third party who it has no reason to believe is under any obligation of confidentiality.

## 14.  **TERM AND TERMINATION**.

The term of this Agreement shall be for a period of one (1) year (accept for the potential loss of Exclusivity, or second year extension under Section 8), and shall be automatically renewed in one (1) year periods thereafter, unless earlier terminated in writing by either party with fifteen (15) days' prior written notice thereof to the other party.

      (a)    Tail Period.   Upon Termination of the Agreement, a list shall be compiled by the Parties within five (5) business days of the Termination Date, of all the names, their identities and contact information for prospective investors that have been introduced to the Company by or through the Agent that have not (as of the "Termination Date") entered into a subscription agreement with the Company or the Fund (the "Residual Prospect List"), including those previously submitted to the Company on an Exhibit A Investor Information Form.  Beginning with the Termination Date, and for the next twelve (12) months (the "Tail Period"), should any of the Prospective Investors on the Residual Prospect List subscribe and fully fund their investment into the Fund within said Tail Period, then the Fees to Agent provided in Section Two (2), shall apply. Consistent with this Subsection, only those Prospective Investors included in the Residual Prospect List shall be covered by this Agreement following termination.

**15.**    **GENERAL PROVISIONS**.

      (a)    **Effect of Headings; Schedules**.  The subject headings of the sections of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.  All schedules to this Agreement are incorporated in the Agreement in their entirety.

      (b)    **Entire Agreement; Modification; Waiver**.  This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in this Agreement, except for the other agreements referenced in this Agreement.  This Agreement supersedes all prior and contemporaneous agreements (other than those entered into in writing simultaneously with this Agreement) and all prior and contemporaneous representations and understandings of the parties.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

      (c)    **Counterparts**.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

      (d)    **Parties in Interest**.  Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to this Agreement and their respective successors and assigns.

Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third person to any party to this Agreement, nor shall any provision give any third person any right of subrogation or action over against any party to this Agreement.

(e)     **Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, beneficiaries, legal representatives, successors and assigns. This Agreement may only be assigned by Agent with the express written consent of Company.

(f)     **Survival of Representations, Warranties and Covenants**.    The representations, warranties and covenants of the parties contained in this Agreement shall survive the execution of this Agreement.

(g)     **Notices**.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed duly given (i) on the date of delivery if personally delivered, (ii) one business day after delivery by overnight courier, telegram or facsimile, or (iii) three business days after mailing if mailed by first-class mail, postage prepaid, to the parties at their addresses set forth below, or such other address designated from time to time in writing by such party to all other parties.

1.     Address Information for Parties

Prima Luce, LLC
2400 First Street
Suite 214
Ft Myers, FL 33901
239-362-2368
info@primaluceliving.com
Attn:  Robert MacFarlane

Heron Investments, Ltd.
104-88 Nansanhuan
Xi Road
Fengtai District
Beijing China
0086 138 194 39945
heroninvest@hotmail.com
Attn:  Xiaocheng Wang

(h)     **Governing Law, Venue and Severability**.  This Agreement shall be governed by and construed under the laws of the State of Florida and any actions in connection with or arising out of this Agreement shall be commenced and maintained only in the U.S District Court, Middle District of Florida, County of Lee, Ft. Myers, Florida.  If any provision of this Agreement is invalid or unenforceable, such provision shall (i) be modified to the minimum extent necessary to render it valid and enforceable, or (ii) if it cannot be so modified, be deemed

11298687.4                                            11

not to be a part of this Agreement and shall not affect the validity or enforceability of the remaining provisions.

(i)      **Necessary Acts**.  Each party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

(j)      **Attorneys' Fees**.  If any party commences or is made a party to a lawsuit, arbitration or other proceeding to enforce or interpret this Agreement, the prevailing party in such proceeding shall be entitled to recover from the other party all attorneys' fees and other costs (whether otherwise taxable or recoverable) incurred in connection with such proceeding, or including without limitation any appeal or enforcement of any judgment or decision rendered in such proceeding.

(k)      **Mediation and Arbitration**.

(a)      **Agreement**.  Any dispute, claim or other controversy arising under this Agreement, including without limitation any dispute regarding the interpretation or enforcement of this Agreement and any claims asserted against an affiliate, agent or representative of a party (at the request of such person), shall be resolved pursuant to the following provisions.

(b)      **Mediation**.  Any claim, dispute or other controversy in any manner related to this Agreement shall be resolved through mediation requested by either party.  The mediation shall be conducted by an organization or individual selected by agreement of the parties or, failing such agreement, within ten (10) days of a written request to mediate served by registered or certified mail, by the Fort Myers, Florida offices of the American Arbitration Association ("**AAA**").  The requesting party shall contact AAA to schedule a mediation conference within thirty (30) days.  The parties may agree on a mediator from the AAA panel.  If they are unable to agree, AAA shall provide a list of three (3) available mediators and each party may strike one.  The remaining one will serve as the mediator.  Neither party may initiate arbitration proceedings until mediation is completed.  If either party refuses to mediate then the non-refusing party may proceed to arbitration.  Any party that fails or refuses to mediate shall not recover attorneys fees or costs pursuant to this agreement even if such party is the prevailing party in any proceeding.

(c)      **Arbitration**.  Any claim, dispute or other controversy not resolved through mediation shall be resolved by binding arbitration upon the request of either party.  The complaining party shall initiate arbitration by sending a written demand for arbitration by registered or certified mail to all parties.  The demand must contain a description of the dispute, the amount involved, and the remedy sought.  The arbitration will be submitted to an organization or individual agreed upon by the parties or, failing such an agreement, within ten (10) days of the request for arbitration either party may demand arbitration by the Fort Myers, Florida offices of AAA.  The parties may agree on an arbitrator from the AAA panel.  If they are unable to agree, AAA shall provide a list of three (3) available arbitrators and each party may strike one.  The remaining one will serve as arbitrator.  The arbitrator may not be the same person who served as mediator.

(l)   **Legal Representation**.  The parties acknowledge that this Agreement has been prepared by the Company's legal counsel.  As a result, the Company has strongly urged the Agent to consult with its own independent legal counsel with respect to this Agreement and the transactions contemplated hereby.  Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party drafting it is not applicable and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose of the parties and this Agreement.

(m)   **Construction**.  This Agreement has been negotiated at arm's length, and each party has been represented by legal counsel.  Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party drafting it is not applicable and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose of the parties and this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Overseas EB-5 Services Agreement as of the day first written above.

**COMPANY:**

PRIMA LUCE, LLC

By: _____
Name: Robert A. MacFarlane
Its:    Managing Member

**AGENT:**

HERON INVESTMENTS, LTD.

By: _____   Feb.8.2017.
Name: Xiaocheng Wang
Its:    President

## **EXHIBIT A**

### **INVESTOR INFORMATION FORM**

1.   Name: _____
     (Exact name, as it should appear in the records of the Company.)

     Address: _____

     _____

     Telephone: _____   FAX: _____

     Passport and/or Social Security Number: _____

     E-mail address: _____

2.   Name of my Immigration Consultant:

     Name: _____

     Company: _____

     Address (City, State and Zip): _____

     Telephone Number: _____

     Fax #: _____

     E-mail address: _____

## EXHIBIT B

### SUBSCRIBER ACKNOWLEDGEMENT

The undersigned subscriber (the "**Subscriber**") hereby acknowledges that _____ (the "**Agent**") has acted solely as an Agent in introducing the undersigned Subscriber to the _____ (the "**Company**").  This acknowledgment relates solely to Agent's services rendered in providing the name of the Subscriber to the Company.   The Subscriber acknowledges that there are no additional services that the Agent provided to the Subscriber, and the Subscriber further verifies and confirms that the Agent (i) did not provide advice to any investor in connection with investing into the relevant project or obtaining the EB-5 visa, (ii) is prohibited from structuring the investment, negotiating terms or presenting information regarding the Company or relevant offering to any investor, (iii) is prohibited from advising investors with regard to the investment, (iv) is receiving no compensation other than the Agent's Fee, (v) is not a licensed securities broker or dealer, or investment advisor, (vi) this addendum is not intended for the purpose of buying, selling or trading securities, or offering counsel or advice with respect to any of such activities and (vii) Agent is in compliance with any and all applicable laws and regulations and codes of conduct governing his/her activities in finding investors and introducing investors to the Company or the relevant project, including but not limited to federal and state securities laws and securities and exchange commission rules and regulations, with or without regard to  whether such laws, rules and regulations require or permit Agent to be registered as an "Agent" and to accept fees for such services.  The Agent has no responsibility for, nor will the Agent make recommendations concerning the terms, conditions or provisions of, any agreement between the Company and the Subscriber related to the purposes of the Company or the manner or means of consummating the transaction between the Company and the Subscriber under the terms of the relevant offering.

The undersigned Subscriber has executed this Acknowledgement as of this _____ day of _____, 20____.

**SUBSCRIBER:**


_____
Print Exact Name of Subscriber


_____
Signature of Subscriber

# EXHIBIT

# 2

**SIGNATURE BANK**

April 20, 2017

Prima Luce Management LLC
Prima Luce EB-5 Fund LLC
c/o Robert MacFarlane
2400 First Street, Suite 212
Fort Myers, FL  33901
Email: info@americanlibertyeb5.com

Re: Prima Luce EB-5 Fund LLC EB-5 Escrow                    WANG Hua

Dear Mr. Mastroianni,

Signature Bank as Escrow Agent on the above referenced transaction verifies that a transfer in the
amount of $505,046.00 from WANG Hua was deposited to the respective escrow account on April
11, 2017.

Thank you and please do not hesitate to contact me with questions.

Sincerely,

April Feely
Associate Group Director

cc: barney@tmogholdings.com